UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER M. SUTTON,

        Petitioner,

        v.                 CAUSE NO. 3:21-CV-897-MGG

WARDEN,

        Respondent.

## OPINION AND ORDER

Christopher M. Sutton, a prisoner without a lawyer, filed an habeas corpus petition to challenge his conviction for child molesting under Case No. 01C01-807-FA-9. Following a jury trial, on January 29, 2010, the Adams Circuit Court sentenced him to forty years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial:

> Seven-year-old Z.H. lived with her mother S.C, her three-year old brother, and thirty-two-year-old Sutton. S.C. and Sutton had lived together for "about 2, 2 years," and Z.H. called Sutton "daddy." On July 8, 2008, Z.H. and her brother were in bed with S.C. and Sutton. Z.H. had an issue with wetting herself at night and wore a pull-up diaper. S.C, who is a sound sleeper, did not hear Sutton leave the next morning.
>
> S.C. woke up around 7:00 a.m., and Z.H. was already awake. Z.H. went into the bathroom and her mother told her to take off her clothes so that

she could take a bath. Z.H. told S.C. that her vagina hurt. S.C. told Z.H. that she "probably peed [her] pants, um go ahead and take your clothes off you'll be fine," and Z.H. stated "no mom my vagina hurts because . . . daddy stuck his penis in my vagina."

Without talking to Z.H. about what had happened, S.C. called her mother. S.C.'s mother and sister arrived, and her sister called the police. Later that day, Danielle Goewert of the Fort Wayne Child Advocacy Center interviewed Z.H. and the interview was recorded. Z.H. informed Goewert that Sutton put his penis in her vagina the previous night. Z.H. stated that Sutton was asleep because his eyes were closed. Z.H. stated that Sutton's penis touched her pull-up diaper and that her pull-up diaper went into her vagina. Z.H. also stated that her brother once smacked her in her vagina.

After her interview, Z.H. was examined at the Fort Wayne Sexual Assault Treatment Center by Sharon Robinson, the chief administrative officer and a sexual assault nurse examiner. Robinson asked Z.H. what had happened to her, and Z.H. stated that her "daddy put his penis inside [her] vagina and that he pushed [her] pull up inside with his penis . . . ." Robinson observed Z.H.'s "internal female sex organ" and "her labia minora," which she described as "beefy regnant" or "beefy like in red meat, so it's really dark red . . . ." Robinson also observed petechiae, which is "pinpoint bruising," on Z.H.'s labia minora and above her urethra.

When Sutton arrived home, Berne Police Detective James Newbold identified himself to Sutton and asked him if he would come to the police department with him. Sutton said that he would and asked if he was going to jail. During the interview, Detective Newbold told Sutton that the interview related to the fact that Z.H. had told her mother that her vagina hurt. Sutton stated that Z.H. had complained about her vagina hurting for probably the last year. Detective Newbold asked Sutton if there was a particular reason why Z.H.'s vagina would be hurting, and Sutton stated that over the weekend Z.H. complained that she had been hurt on the "swings or something," but Z.H.'s aunt checked her and determined that she was only scratched. Sutton denied placing his penis in Z.H.'s vagina. When asked why Z.H. would say that he had placed his penis in her vagina, Sutton stated that he is erect in the mornings and that he must roll over Z.H. to exit the bed but that his penis did not touch her. Sutton also indicated that he attempts to be sure that he is "clear" of the children and is "careful" because he knows the children are usually in the bed.

> At one point during the interview, Detective Newbold asked Sutton if there was any reason why a pubic hair would be found inside of Z.H.'s vagina, and Sutton stated that he was bald because he shaves his pubic area. Detective Newbold indicated that he was not sure whether pubic hairs were found or not, and Sutton indicated that it would not matter because he shaves. At some point during the interview, Sutton pulled his pants down to show Detective Newbold his pubic area, and Detective Newbold observed that Sutton had pubic hair of "maybe a half inch to three quarters" in length.
>
> On July 14, 2008, the State charged Sutton with child molesting as a class A felony.
>
> * * *
>
> The jury found Sutton guilty as charged. The court sentenced Sutton to forty-five years in the Department of Correction with five years suspended.

ECF 13-6; *Sutton v. State*, 939 N.E.2d 706 (Ind. App. 2010).

In the habeas petition, Sutton argues that he is entitled to habeas relief because the trial court erred by admitting out-of-court statements from the victim through other witnesses that amounted to drumbeat repetition and by admitting the recording of his police interview. He argues that trial counsel erred by failing to object to out-of-court statements attributed to the victim, by failing to object to the police interview recording and the prosecution's closing argument; by failing to move for a direct verdict based on insufficiency of the evidence;[1] and by failing to investigate the victim's medical history.

---

[1] As discussed below, the claims that counsel should have challenged the sufficiency of the evidence were procedurally defaulted, but these claims also fail on their merits. Contrary to Sutton's assertion, trial counsel moved for a directed verdict at trial. ECF 14-7 at 18-19. Moreover, appellate counsel could not have prevailed on a sufficiency of the evidence argument due to the victim's testimony or even under Indiana's incredible dubiosity rule due to the presence of substantial circumstantial evidence suggesting Sutton's guilt as detailed below. *See Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("It is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."); *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) ("A court will only

He further argues that appellate counsel erred by failing to raise arguments regarding the prosecution's closing arguments, the out-of-court statements attributed to the victim, and insufficiency of the evidence.

Additionally, Sutton argues that he is entitled to habeas relief because the State courts declined to authorize subpoenas to obtain the victim's medical records on post-conviction review. Because there is no constitutional right to post-conviction proceedings, the claim that Sutton was denied discovery on post-conviction review does not present a cognizable ground for habeas relief. *See Flores-Ramirez v. Foster*, 811 F.3d 861, 866 (7th Cir. 2016) ("It is well established that the Constitution does not guarantee any postconviction process, much less specific rights during a postconviction hearing.").

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does,

---

impinge upon the jury's duty to judge witness credibility where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt.").

however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

On direct appeal, Sutton presented the habeas claims of trial court error to the Indiana Court of Appeals but did not present any of his habeas claims to the Indiana Supreme Court in a petition to transfer. ECF 13-3; ECF 13-7. On post-conviction review, Sutton presented to the Indiana Supreme Court claims that trial counsel failed to object to out-of-court statements attributed to the victim and failed to object to the prosecution's closing argument and his claims that appellate counsel failed to raise arguments on the same grounds on direct appeal. ECF 13-21. Consequently, Sutton fairly presented only the claims in the petition to transfer on post-conviction review, and the remainder are procedurally defaulted.

Sutton does not clearly assert any valid basis to excuse procedural default in the petition or traverse. However, these filings suggest that Sutton procedurally defaulted his claims of trial court error due to ineffective assistance of trial and appellate counsel, so the court will consider whether these serve as a basis to excuse procedural default for

these claims.[2] A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). "Meritorious claims of ineffective assistance can excuse a procedural default." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014*). "*But those claims must themselves be preserved; in order to use the independent constitutional claims of ineffective assistance of trial and appellate counsel as cause to excuse a procedural default, a petitioner is required to raise the claims through one full round of state court review, or face procedural default of those claims as well." *Id.* As detailed above, Sutton fairly presented his claims that trial counsel and appellate counsel failed to contest the admission of out-of-court statements attributed to the victim through other witnesses. Consequently, the court will assume without deciding that cause-and prejudice applies to the related claim of trial court error and will consider its merits.[3]

## STANDARD OF REVIEW

---

[2] By contrast, neither the petition nor the traverse suggest that Sutton can demonstrate his actual innocence based on newly discovered evidence, that he received ineffective assistance of counsel before the Adams Circuit Court on post-conviction review, or that the State otherwise caused him to procedurally default his claims. *See e.g., Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (ineffective assistance of post-conviction counsel at initial level); *House v. Bell*, 547 U.S. 518, 536–37 (2006) (actual innocence); *Weddington v. Zatecky*, 721 F.3d 456, 466 (7th Cir. 2013) (confiscation of legal materials).

[3] Notably, federal courts have the discretion to consider claims for habeas relief under certain circumstances even if such claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

7

## DISCUSSION

### Trial Court Error -- Evidentiary Ruling

Sutton argues that he is entitled to habeas relief because the trial court erred by admitting out-of-court statements from the victim through other witnesses that amounted to drumbeat repetition. "To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial." *Howard v. O'Sullivan*, 185 F.3d 721, 723–24 (7th Cir. 1999). "This means that the error must have produced a significant likelihood that an innocent person has been convicted." *Id.* "Indeed, because of this high standard, evidentiary questions are generally not subject to review in habeas corpus proceedings." *Id.*

Under Indiana law, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. R. Evid. 403.

> One danger of prejudice arises in the "drumbeat repetition" of an out-of-court assertion. Indeed, in light of a proffered non-hearsay purpose, exclusion might not be warranted where there is a mere isolated reference to an assertion. However, as additional testimony about the assertion "beats the drum," there is increasing danger the jury will use the testimony for an improper purpose. For example, the jury might use the testimony as proof of the matter asserted. Or, the jury could treat the repetitive testimony as a form of vouching for the credibility of the declarant. As to the latter risk, this type of problematic vouching is not the blatant type prohibited by Evidence Rule 704(b) — where a witness directly opines about "the truth or falsity of allegations" or "whether a witness has testified truthfully." Rather, the risk is insidious. That is, the repeated

8

references might eventually inundate the jury, leading them toward an
inference that witnesses are vouching for the credibility of the declarant.

*Kress v. State*, 133 N.E.3d 742, 747 (Ind. App. 2019).

The concern regarding drumbeat repetition arose in the context of *Stone v. State*,
536 N.E.2d 534 (Ind. App. Ct. 1989), and *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991). In
*Stone*, the mother of the victim testified twice about what the victim had told her about
incidents of child molestation. *Id.* at 536. The mother's testimony was followed by the
victim's testimony. *Id.* Thereafter, four other witnesses testified as to what the victim
told them about the incidents, and no physical evidence corroborated the victim's
account. *Id.* The Indiana Court of Appeals reversed the conviction, reasoning that the
verdict turned on the victim's credibility and that the repetition of his account by five
adult witnesses likely bolstered his credibility to the point of nullifying the criminal
defendant's presumption of innocence. *Id.* at 540.

In *Modesitt*, three adult witnesses testified as to what the victim told them about
the incidents of child molestation. 578 N.E.2d at 650. The victim provided her account
only after the adult testimony. *Id.* The Indiana Supreme Court observed that this
sequence of events allowed the prosecution to present the victim's account three times
without providing the criminal defendant with an opportunity to challenge the victim's
account through cross-examination. *Id.* at 651-52. The appellate court found that this
sequence amounted to unfair prejudice because "[p]rior to putting the victim on the
stand, the victim's veracity had been, in essence, vouchsafed by permitting the three
witnesses to repeat the accusations of the victim." *Id.*

At Sutton's trial, trial counsel said the following as part of his opening statement:

> You will hear testimony that [the victim] told the interviewer at the child advocacy center that her brother Preston hit her in the vagina. You will hear testimony that a nurse found slight bruising on [the victim's] genital area in addition to other bruises and marks. You will hear [the victim] state that at the time of the allegation that she and [Sutton] were back to back in bed when this occurred. Recent, in her later interview, she stated she was lying face down with her legs together and her knees straight. You will hopefully apply your common sense to the evidence and find the Defendant not guilty.

ECF 14-5 at 117.

The prosecution presented Danielle Goewert, a forensic interviewer at the Child Advocacy Center in Fort Wayne. *Id.* at 123- 31; ECF 14-6 at 1-10. She testified that she interviewed the victim who told her that she had been sexually assaulted. *Id.* She testified that the victim had demonstrated the position of her and Sutton in an ambiguous manner. *Id.* It could have meant that she and Sutton were lying back-to-back or lying face-to-face, but Interviewer Goewert believed she meant face-to-face. *Id.* Interviewer Goewert did not relay the entirety of what the victim told her but authenticated a video recording of the interview, which was then presented to the jury. *Id.* The prosecution also presented a recording of a court hearing in which the prosecution and trial counsel each questioned the victim regarding her account of the child molestation incident. *Id.*

The prosecution presented the victim's mother, who testified about what the victim had told her on the morning after the child molestation incident occurred. ECF 14-6 at 21-36. The prosecution also presented Sharon Robison, a sexual assault nurse examiner. *Id.* at 80-100; ECF 14-7 at 1-8. Nurse Robison testified briefly about what the

victim had told her during the examination. *Id.* Specifically, Nurse Robison testified, " I asked her what had happened to her and she stated to me that my daddy put his penis inside my vagina and that he pushed my pull up inside with his penis." *Id.* On cross-examination, trial counsel questioned Nurse Robison about alternate explanations, including the victim's three-year old brother hitting her in her vagina. *Id.* On redirect, Nurse Robison testified that the victim's injuries were consistent with the victim's account. *Id.*

On direct appeal, the Indiana Court of Appeals considered whether the evidence at trial amounted to drumbeat repetition. ECF 13-6 at 19-21. The appellate court distinguished *Stone* from Sutton's case based on the number of witnesses and the brief nature of their accounts of what the victim had told them. *Id.* The appellate court further observed that adult witnesses were permitted to testify as to the victim's account only after the presentation of the victim's recorded statements and testimony. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination on whether the evidence at trial amounted to drumbeat repetition. Though Investigator Goewert and Nurse Robison conveyed some of what the victim had told them about the child molestation incident, they relayed no more than necessary to rebut the defenses raised by Sutton at trial. Notably, the video recording of the victim's testimony at the court hearing was a substitute for her appearance at trial in which trial counsel subjected her to cross-examination. ECF 14-4 at 76-96. Indiana courts expressed concerns regarding drumbeat repetition due to the

effect of adults repeatedly testifying to the victim's account without allowing an

opportunity to hear from and to cross-examine the victim, a sequence of events that did

not occur here. While the admission of both the video recording of the interview at the

Child Advocacy Center and the victim's mother's testimony may have been redundant,

no objections were raised, and, even if they were, these recordings, by themselves,

would not qualify as drumbeat repetition under *Stone* or *Modesitt*.

Moreover, the court is not persuaded that the cumulative nature of this evidence

result in a substantial likelihood that an innocent man has been convicted because the

record contains substantial independent evidence of Sutton's guilt. Sutton testified at

trial that he and the victim had shared the same bed and that he had an erection during

that time, which establishes that he had the opportunity to the commit the crime. ECF

14-7 at 25. Nurse Robison testified that she found that the bruising on the victim's

genitals and the onset of the victim wetting her pants during daytime were consistent

with the victim's account. ECF 14-6 at 93-100. The record also contained a recording in

which Sutton falsely told the police that he had shaved his pubic area when asked about

the presence of pubic hair in the victim's diaper, which suggests consciousness of guilt.

*Id.* at 65-77. Therefore, this claim is not a basis for habeas relief.

<u>Ineffective Assistance of Counsel</u>

Sutton argues that he is entitled to habeas relief because trial counsel failed to

object to hearsay statements attributed to the victim and failed to object to the

prosecution's closing argument. He further argues that appellate counsel failed to raise

arguments regarding improper hearsay statements attributed to the victim and regarding the prosecution's closing argument.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

13

Generally speaking, the performance of appellate counsel is assessed using the same standards applied to trial counsel under *Strickland*. *Mason v. Hanks*, 97 F.3d 887, 892 (7th Cir. 1996). "Effective advocacy does not require the appellate attorney to raise every non-frivolous issue under the sun, of course." *Id.* at 893. "But when appellate counsel omits (without legitimate strategic purpose) a significant and obvious issue, we will deem his performance and when that omitted issue may have resulted in a reversal of the conviction, or an order for a new trial, we will deem the lack of effective assistance prejudicial." *Id.* Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

At Sutton's trial, the victim's mother testified as follows:

**Prosecution:** Let's talk about July 9, 2008. Do you remember that morning?

**Victim's Mother:** Yes.

**Prosecution:** About what time was it you woke up?

**Victim's Mother:** I'd say around seven.

**Prosecution:** And when you woke up who was in the home?

**Victim's Mother:** Me and my two children.

**Prosecution:** Was anyone else awake?

**Victim's Mother:** My daughter was.

**Prosecution:** That would be [the victim]?

**Victim's Mother:** Yes.

**Prosecution:** Okay. Just tell them what happened.

**Victim's Mother:** Um, I woke up and I usually woke up about seven. We did the morning medicine. She takes it in the morning and we get ready for school or whatever we have planned to do that day. And when I woke up she had already been awake and she had told me . . . um, she had gone in the bathroom, and I said you need to get your clothes off, let's get in the bath, and she said that her vagina hurt. And I said, well you probably peed your pants, go ahead and take your clothes off, you'll be fine. And she said no mom my vagina hurts because daddy stuck his penis in my vagina.

ECF 14-6 at 29-30.

Sharon Robison, the sexual assault nurse examiner testified:

**Prosecution:** And why don't you explain to the jury then once you got [the victim] back what you did, what happened?

**Robison:** Okay.

**Prosecution:** And whenever you feel necessary, if helpful, if you want to use the easel and drawing please go ahead.

**Robison:** Okay. Alright. [The victim] and I went back to the exam room and I explained to her that I was a nurse even though I was in nursing scrubs so that she understood that I was a nurse and that I was there to make suer she's okay. I explained the room to her, I explained the equipment to her, and then I asked her what had happened to her, and she stated to me that my daddy put his penis inside my vagina and that he pushed my pullup inside with his penis and so at that point I asked her to change into a little hospital gown and then I collected her vitals and I told her that I was going to look from head to toe and that I was also going to look at her genital area as well. She called it a vagina so whatever the child uses is the term that I use so I told her I was going to look at her vagina and so I started with my head-to-toe assessment. I looked at the front of her and the back of her from the top of her head down to her toes. Asked her if anything hurt, she said no. And then I told her I was going to look at her vagina.

*Id.* at 93-94. On cross-examination, trial counsel suggested that the victim's three-year

old brother caused the bruising on her genital area. ECF 14-7 at 1. On redirect, Robison

testified that, while the bruising could have had other causes, she found that Sutton

caused the bruising through penetration based on the victim's account and her physical

examination. *Id.* at 1-5.

At closing, the prosecution commented on the credibility of Sutton and of the

victim.

> You know that Chris Sutton will lie. In his interview at the Berne Police
> Station. Newbold: is that something you do all the time? This is a man
> who is being interrogated about molesting his step-daughter. Ok. So this
> is his out as he thinks, it might be his out. Is it something you do all the
> time? Yeah. That's news to his fiancé who he lived with for two years.
> Maybe twice in the two years they lived together he shaved. Newbold:
> well I don't know if there was a pubic hair found there or not. The
> response, it doesn't matter, I shave, if there's a pubic hair, it came from
> somebody else. And then at the end Newbold comes back in after
> spending time with Dean Amstutz and Jim Newbold revisits the claim
> that he shaves himself and basically says prove it, we want to see. And the
> response is, now when he has to prove it, I'm not completely bald right
> now, I don't think. I've got a little bit of hair. It's what it's worth to you,
> but it's a lot. He will lie to clear himself.
>
> * * *
>
> She called Sutton daddy. I mean he had developed a trust and everything
> else and he got to the point where he was her daddy. She liked him. You
> don't call somebody you don't like daddy. Sutton even said . . . He said
> today, he said it in the interview and he said it today, he doesn't know
> why she said it. I'll suggest why: because it's true. That's why. She's only
> seven years old. Kids don't lie to get somebody else in trouble; they lie to
> get themselves out of trouble. There is no reasonable explanation for the
> lie. Why would he lie. Conviction. Molester is not a good thing to be
> tagged with the rest of your life and any punished that will go with it.
> There's a lot of reasons to lie. There's a lot of good things to lie.
>
> * * *
>
> And that's what I'm going to ask you to do cause [the victim] did what
> every kid is told to do and do what's right and to tell on people. Even
> though she didn't even know it, she did the right thing. I'm asking you to

do the right thing and I'm asking you to return a verdict of child
molesting.

*Id.* at 36-42, 46-48. The prosecution also commented that there was no evidence that the
victim had been coached or had merely dreamed the molestation incident. *Id.*

On direct appeal, appellate counsel challenged the admission of the recorded
statements of the victim, testimony of hearsay statements attributed by the victim as
drumbeat repetition, and the recorded statements of Sutton during a police interview.
*Id.* at 13-3. At the post-conviction stage, appellate counsel testified that she did not
ordinarily raise arguments that were not raised by trial due to their low likelihood of
success. ECF 14-14 at 42-43. According to appellate counsel, appellate courts consider
such arguments under the fundamental error standard, which is a more demanding
standard. *Id.* She testified that she believed the better route was to challenge such issues
through an ineffective assistance of trial counsel claim on post-conviction review. *Id.*

On appeal, the Indiana Court of Appeals rejected the claim that trial counsel
provided ineffective assistance by failing to object to the hearsay statements attributed
to the victim. ECF 13-20 at 7-14. The appellate court found that Nurse Robison's
testimony about what the victim had told her was not unfairly prejudicial because it
was necessary to rebut the alternative explanations offered by the defense. *Id.* The
appellate court further found that Interviewer Goewert and Nurse Robison's testimony
about what the victim had told them were not inadmissible hearsay because the victim
made the statements for the purpose of obtaining medical diagnosis or treatment. *Id.*
The appellate court agreed that the mother's testimony regarding what the victim had

told her constituted inadmissible hearsay but disagreed that the failure to object on this basis amounted to prejudice. *Id.* The appellate court reasoned that the mother's testimony was cumulative of other evidence presented at trial. *Id.* Additionally, the appellate court found that, while some witnesses repeated what the victim had told them or made clinical assessments, none of the witnesses impermissibly vouched for the victim by commenting on her truthfulness. *Id.* Consequently, any objections on this basis would have been futile. *Id.*

The Indiana Court of Appeals also rejected the claim that trial counsel provided ineffective assistance by failing to object to the prosecution's closing arguments. *Id.* at 14-21. The appellate court found that much of the prosecution's statements credibility were fair comments on the evidence, including the recording of Sutton's police interview, the victim's testimony on her feelings towards Sutton as a father figure, and the absence of evidence suggesting that the victim had fabricated her account. *Id.* The appellate court found two of the prosecution's statements amounted to improper vouching: (1) the statement that children do not lie to get others in trouble; and (2) the statement that the victim did the right thing by reporting Sutton's abuse. *Id.* However, the appellate court found that objections to these statements would have been unlikely to change the outcome of the case, noting the trial court's explanation that the arguments of counsel were not evidence and that the evidence against Sutton was strong. *Id.*

Additionally, the Indiana Court of Appeals rejected the claims that appellate counsel failed to raise arguments regarding improper hearsay statements attributed to

the victim and regarding the prosecution's closing argument. *Id.* at 23-24. The appellate court reasoned that, if trial counsel did not render ineffective assistance by failing to object on these grounds, then appellate counsel did not render ineffective assistance by declining to raise them on appeal. *Id.*

After reviewing the record, the court cannot find that the State court made an unreasonable determination on the ineffective assistance of trial counsel claims. As noted by the Indiana Court of Appeals, most of these objections would have been futile, and the failure to make futile objections is insufficient to demonstrate a claim of ineffective assistance of trial counsel. *See e.g., Carter v. Douma*, 796 F.3d 726, 735 (7th Cir. 2015) ("His performance was not deficient by failing to make a futile objection."); *U.S. v. Neeley*, 189 F.3d 670, 684 (7th Cir. 1999) ("Obviously, counsel cannot be considered ineffective for failing to make an objection to the introduction of evidence that was properly admitted."). Sutton asks the court to reevaluate the appellate court's findings regarding the futility of the evidentiary objections, but "[b]ecause that conclusion rests on an interpretation of state law, it is iron-clad on habeas review." *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018); *see also Sennholz v. Strahota*, 722 Fed. Appx. 569 (7th Cir. 2018) ("That is a determination of state law by the state court and therefore is not subject to our review."); *Harper v. Brown*, 865 F.3d 857 (7th Cir. 2017) ("[O]n § 2254 habeas review, we cannot disagree with a state court's resolution of an issue of state law."); *Miller v. Zatecky*, 820 F.3d 275 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law"); *Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004) ("[B]ecause it is not our place to second-guess state courts in

interpreting state law we must find that the State court did not make an unreasonable application of *Strickland* when it found counsel's failure to object to testimony.").

The court also cannot find the State court's determination on the prejudicial effect of the meritorious objections was unreasonable. Based on the State court analysis, trial counsel could have prevailed on objections to the victim's mother's testimony as to what the victim told her and the prosecution's comments that children do not lie to get others in trouble and that the victim did the right thing by reporting Sutton's abuse. The court agrees that, considering the arguments, the evidence, and the jury instructions in their entirety, these missteps were unlikely to have affected the outcome of the trial. The victim's mother only briefly relayed what the victim told her, and the jury had already heard this account from the victim herself. Moreover, the trial court expressly instructed the jury that arguments were not evidence, and the record contained no suggestion, from Sutton, trial counsel, or otherwise, that the victim's account was motivated by her desire to get anyone in or out of trouble. ECF 14-5 at 110-11, ECF 14-7 at 22-27, 43-46,

Further, the court cannot find that the State court's determination on the claims regarding appellate counsel was unreasonable. It follows that, if Sutton cannot prevail on his ineffective assistance of trial counsel claim, he also cannot prevail on his claim that appellate counsel was ineffective for failing to raise the same arguments on appeal. This is particularly true given that the more exacting fundamental error standard would have applied to these arguments due to trial counsel's failure to object at trial. *See Benefield v. State*, 945 N.E.2d 791, 801 (Ind. App. 2011) ("The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant

20

violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process."). Therefore, Sutton's claims of ineffective assistance of counsel are not a basis for habeas relief.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Sutton to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 2); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on May 17, 2022

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge